## PIER v. ENTRAVIA.

### No. 2103.

Court of Appeal of Louisiana. First Circuit.
April 10, 1940.

Reid & Reid, of Hammond, for appellant.

Rownd & Tycer, of Hammond, and H. W. & H. M. Robinson, of New Orleans, for appellee.

LeBLANC, Judge.

Three suits for damages for personal injuries and for other damages arising out of the same accident were consolidated for trial in the court below and for argument in this court.

In the present suit, Elmer Pier is the plaintiff seeking to recover the sum of $2,535.80 from the defendant, Andrew Entravia. In the other two, Floyd F. Bankston is the plaintiff in one, seeking damages in the sum of $2,031, and Pauleet Chavers, plaintiff in the other, claiming the sum of $4,789.80. The petition in each case is the same save as to the nature and extent of the injuries sustained by the plaintiff and the amount demanded as damages.

The allegations are to the effect that on October 31, 1938, the plaintiffs, all WPA workers, were aboard Chavers' Chevrolet truck which was being driven by him, at about 3:50 o'clock in the afternoon, proceeding north on a road referred to as the "Horseshoe Road", and that on reaching the south side of the road at the point where it is intersected by the "Independence-Montpelier" road running east and west, the truck came to a stop, the front wheels resting on a wooden bridge over the ditch at the crossing, and that the driver, seeing no vehicles approaching from either direction on the other road, proceeded slowly across the intersecting road and had nearly completed the crossing, half of the truck being clear thereof, when it was struck on the right side toward the rear by a Ford truck belonging to the defendant, Andrew Entravia, which was proceeding west, and was hurled a distance of 48 feet west from the place of the impact and turned over in a ditch on the north side of the roadway.

It is charged that the driver of the Ford truck, George Ray, who was acting within the scope and course of his employment by the defendant was grossly negligent in several important respects, among which should be mentioned his reckless driving at an excessive rate of speed said to be more than sixty miles per hour, especially in rounding a curve in the highway just before reaching the intersection, his failure to give any warning or signal of his approach to the intersecting road and his failure also to accord to the Chevrolet truck the right of way over the intersection by having pre-empted and almost crossed the same.

The defense in each case is the same consisting of a denial of the acts of negligence charged against the driver of the Ford truck and an affirmative defense that the accident was caused solely by the negligence of the driver of the Chevrolet truck in driving suddenly into the intersection without looking to see if other vehicles were approaching and in face of the Ford truck which was then about to enter and could not then stop or turn aside to avoid a collision. After trial judgment was rendered in favor of the plaintiff and against the defendant in each case. Plaintiff in this suit, Elmer Pier, was awarded the sum of $1,285.80, Floyd F. Bankston was awarded $1,031, and Pauleet Chavers, the sum of $1,539. The defendant has taken an appeal in each case.

The district judge assigned no written reasons for judgment, but we experience no difficulty in agreeing with him in the conclusion he reached, that the negligence of the driver of the defendant truck was the cause of the accident and that consequently the defendant, his employer, was responsible to the plaintiffs in damages.

The evidence discloses that the three plaintiffs, WPA workers, were going home from work in Chavers' truck. Chavers was driving, Pier was seated to his

right on the driver's seat and Bankston was seated in the rear of the truck with his back against the cab. They were travelling north at a very moderate rate of speed on a dirt road referred to in the record as the Horseshoe road but which we will hereafter refer to in this opinion as the dirt road. The width of that road is not definitely shown but it is estimated to be about 18 feet wide. The defendant truck was travelling west on the gravel highway running east and west and which leads from the town of Independence to the town of Montpelier. This road is estimated to be from 20 to 22 feet wide. We will hereafter refer to it as the gravel road.

The Ford truck was loaded with pulp wood and was being driven by a negro named George Ray. Seated on the driver's seat with him was another negro named Flanders Burton. It is not disputed that the truck belongs to the defendant and was being used at the time in his service and that Ray, the driver and operator, was his employee.

It appears from the testimony that there is a curve referred to by one of the witnesses as a steep curve in the gravel road starting at a distance approximately 400 feet east of the intersection with the dirt road, but the road straightens out as it reaches the intersection proper. On both the north and south sides of the intersection there are wooden boxings or culverts used as bridges over the ditches paralleling the gravel road on each side. The one on the south side, on the day of the accident, was in very bad condition, and that on the north side in a little better condition.

As the Chevrolet truck reached the culvert on the south side, because of the condition of that culvert, it came to a complete stop before crossing over it. While he was stopped, the driver looked in both directions for oncoming traffic on the gravel road and seeing none proceeded slowly over the culvert and across the intersection. The front wheels had already reached the culvert on the north side of the intersection when the truck was struck by the Ford truck, at a point between the cab and the rear wheels. The force of the impact pushed it about 48 feet in a northwesterly direction and it then turned over eastward, coming to a rest in a field on the northeast corner of the intersection. The two negroes had jumped from off the Ford truck and it continued on its way west for a distance of approximately 150 feet from the point of collision.

There is considerable testimony regarding the speed at which the Ford truck was coming, the estimates ranging from 45 to 60 miles per hour. It is contended that it could not possibly have been going that fast as it was geared for a lower speed and it was weighted down with a heavy load of pulp wood. Without attempting to definitely fix the rate of speed at which it was travelling, we are firmly of the opinion 'that it was going too fast considering the fact that it carried such a load and had to round the curve in the road practically at the place of the intersection. Besides, the testimony of numerous witnesses on the question of the speed of the Ford truck cannot possibly be discounted; the physical facts as herein described too strongly support it.

It is urged also by defendant that his truck had the right of way because it approached the intersection from the other truck driver's right. But whatever advantage it may originally have had because of this circumstance, it had to yield it in view of the fact that the other truck not only had entered the intersection first, but had practically negotiated the crossing before it was struck.

After a careful review of the testimony in the case we are satisfied of the correctness of the judgment of the lower court which fixed responsibility for the accident on the driver of the defendant's truck and held the defendant himself liable in damages.

There was no medical testimony offered with regard to the injuries sustained by the three plaintiffs and in that connection we have only the reports and records of the U. S. Marine Hospital, at New Orleans, where they were treated, to inform us concerning the nature and extent of the injuries sustained by each.

We believe that the award in favor of Chavers is about correct and are not disposed to disturb it. He suffered a bad fracture of the right wrist and on the day of the trial, nine months after the accident, had not yet recovered its use. It appears as though he will have some permanent impairment and certainly an award of $1,539, which includes the loss of his truck valued at $75, and loss of time from work, cannot be said to be excessive.

Bankston appears to have suffered bad cuts on the forehead, also about his

 

right ear and eye, the latter being badly bruised and blackened. He had a four-inch cut on the right thigh and a sprain of the right ankle. He was only confined to the hospital eleven days, however, and was able to return to light work on September 26, 1938, about four weeks after the accident. In his case we believe that the award of $1,000 for his injuries is a bit out of proportion to the award in the Chavers case, and the same will be reduced to the sum of $750. The amount of $31 allowed for loss of time is proper and will stand.

 Pier was struck on the head by a piece of flying wood and suffered a slight concussion. He also sustained deep cuts about the face, around both eyes and an abrasion on his right elbow and right thigh. He was in the hospital twelve days and went back to work October 1, 1938, just four days later than Bankston. We are of the opinion that in his case also the award of $1,250 for injuries is slightly out of proportion and will reduce it also by the sum of $250. The award of $35.80 for loss of time will stand.

A separate decree will be entered in each case.

For the reasons herein stated it is ordered that the judgment in favor of Elmer Pier, plaintiff in this suit, be and the same is hereby amended by reducing the amount of the award from the sum of $1,285.80 to the sum of $1,035.80, and that as thus amended it be affirmed. Appellant to pay all costs.